# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NORMAN LEE MALONE,**
        **Petitioner,**

    v.                                                                      **Case No. 04-C-592**

**JANE E. GAMBLE,**
        **Respondent.**

## DECISION AND ORDER

Pro se petitioner Norman Malone, a Wisconsin state prisoner, seeks a writ of habeas corpus challenging his state court convictions after a jury trial on seven drug offenses and three firearm offenses, for which he was sentenced to twenty-five years in prison. Petitioner alleges three violations of his constitutional rights: (1) that the state failed to disclose exculpatory evidence consisting of a search warrant return, which revealed that a police officer later convicted of theft from a crime scene was involved in the search of petitioner's home; (2) that the prosecutor committed misconduct by withholding the warrant return and presenting false testimony about the officer's involvement; and (3) that his trial counsel was ineffective by failing to obtain the return in advance of trial. He also alleges that he was improperly denied an evidentiary hearing in the state courts and seeks an opportunity to develop the record in this court.

### I. FACTS AND BACKGROUND

The state court of appeals summarized the case as follows:

On four occasions from March 20 to March 25, 2000, Malone sold cocaine or heroin to a confidential informant in the presence of an undercover officer and, on two of those occasions, he did so within 1000 feet of a park. On March 26, 2000, the police executed a search warrant at the Milwaukee

residence where police believed Malone was living. From a first-floor bedroom and bathroom, the police seized marijuana, heroin, and firearms.

The March 20-25 events led to four different charges of delivery-of-controlled-substance offenses. The March 26 events led to: one charge of possession with intent to deliver heroin (three grams or less) within 1000 feet of a park, second or subsequent offense; one charge of keeping a drug house, second or subsequent offense; possession of marijuana, second or subsequent offense; and three charges of possession of firearm by felon, habitual criminality. A jury convicted Malone of all ten charges, and the court sentenced him to various concurrent and consecutive prison terms totaling thirty-seven years (twenty-five years of confinement followed by twelve years of extended supervision).

No search warrant return, or any other form identifying the officers involved in executing the search warrant, had been provided to Malone in advance of trial. At Malone's trial, however, the parties briefly presented questions to several witnesses regarding whether Milwaukee Police Detective Edwin Bonilla had been among the officers involved in the search warrant execution. Both Detective Mark Mathy and Detective Glen Bishop indicated that he was not.n3 Malone's sister, Gloria, however, testified that one of the officers she saw during the execution of the search warrant she later recognized in a photo accompanying a newspaper story about an officer stealing money.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

> n3 As the State points out, however, some of the questions and answers related specifically to whether Detective Bonilla was a member of the "entry team." According to the search warrant return, he was not. The form lists seven other detectives comprising the "Entry Team"; it lists Detective Bonilla, two other detectives, and nine officers comprising the "Search and Containment Team." Thus, literally, Detectives Mathy and Bishop testified truthfully in answering that Bonilla was not on the entry team. Further, the record establishes that, in answering some of the questions on both direct and cross-examination, Detectives Mathy and Bishop were mindful of the distinction between the two teams.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Following his trial, while in jail awaiting sentencing, Malone encountered another inmate who, apparently by coincidence, discovered a copy of the search warrant return among the materials in his own case. He provided it to Malone who, in turn, gave it to postconviction counsel. The search

2

warrant return listed "Det Bonilla" among the twelve members of the "Search and Containment Team" for execution of the search warrant at Malone's home on March 26, 2000.

On January 18, 2001, a federal court entered a judgment convicting Detective Bonilla of crimes relating to the August 31, 2000 theft of crime-scene drug money used in a law enforcement sting operation. In his motion for postconviction relief, Malone maintained that the State had breached its duty to disclose exculpatory evidence by not revealing Bonilla's role. Thus, Malone maintained, he had lost an important opportunity to establish reasonable doubt. He explained:

> Det. Bonilla's presence during the search called the legitimacy of the search into question. An officer with Det. Bonilla's record of corruption participating in the execution of a search warrant is enough to raise reasonable doubt as to the origins of the evidence seized in the search. In addition, two witnesses testified at trial that the police brought items into the bedroom where the contraband was found, and that the door to the bedroom was closed at times when officers were inside said room. These facts all create a basis for reasonable doubt.

(Citations omitted.)

In his postconviction motion, Malone conceded that, even without the evidence seized in the search, the evidence was sufficient to prove the first four offenses – the four drug sales during the days leading up to the search warrant. He argued, however, that all the charges be dismissed "as both a sanction and a message to the State." On appeal, while repeating his concession about the first four offenses, Malone expands his Bonilla-based argument to all ten offenses contending that "the cumulative effect of 'Bonilla' evidence . . . may call into question, in the minds of a jury, the accuracy and honesty of all of the State's witnesses . . . especially . . . where . . . two . . . detectives . . . implied that Detective Bonilla was nowhere near" the scene of the search warrant. Denying the postconviction motion, the trial court concluded that, even assuming a discovery violation, Malone had not been prejudiced.

(Answer Ex. C at 3-5.) The court of appeals affirmed the trial court's denial of the motion, and the state supreme court declined to review the case. (<u>Id.</u> Ex. D.)

3

## II. DISCUSSION

**A.     Exhaustion**

State prisoners must first exhaust available state remedies before seeking a writ of habeas corpus in federal court. See 28 U.S.C. 2254(b)(1). A petition containing both exhausted and unexhausted claims, i.e. a "mixed" petition, should be dismissed unless the prisoner agrees to dismiss the unexhausted claim(s) and proceed only on those claims properly presented. See Rose v. Lundy, 455 U.S. 509 (1982). The federal court may also in some circumstances stay the habeas action and allow the prisoner to return to state court to exhaust any unexhausted claims. See Rhines v. Weber, 125 S. Ct. 1528 (2005).

In the present case, respondent argues that petitioner failed to exhaust his claim that the state judiciary improperly denied him an evidentiary hearing. However, respondent failed to raise this defense in her answer. In fact, she admitted that petitioner had exhausted all available state remedies and that none of the claims were procedurally defaulted. (Answer ¶ 3.) Section 2254(b)(3) provides that the state shall not be deemed to have waived the exhaustion requirement or be estopped from relying upon it unless there has been an express waiver through counsel. See Perruquet v. Briley, 390 F.3d 505, 517-18 (7th Cir. 2004). The state's explicit statement that petitioner exhausted his claims would seem to suffice.

In any event, I question whether petitioner's argument, set forth in ¶ 22 C. of the petition, that the state courts improperly denied him a hearing constitutes a separate claim for relief. Instead, petitioner seems to be arguing that the state courts' refusal to allow him to develop the record on his three constitutional claims (set forth above) entitles him to

4

discovery or an evidentiary hearing in this court. Therefore, I could consider this claim in conjunction with his other, underlying constitutional claims, which petitioner did exhaust.

Finally, even if the contention set forth in ¶ 22 C. does constitute a separate constitutional claim, which petitioner failed to exhaust, under § 2254(b)(2) I can always deny a petition on the merits notwithstanding the applicant's failure to exhaust. Because, for the reasons which follow, petitioner's claims fail on the merits, I need not resolve respondent's exhaustion argument.

**B.      Standard of Review of Merits**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant a writ of habeas corpus only if the state court decision on the merits of the petitioner's federal claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta of [the United States Supreme] Court's decisions as of the time of the relevant state-court decision." Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. at 71-72.

A state court decision is "contrary to" Supreme Court precedent if the state court arrives at a conclusion opposite to that reached by the Court on a question of law, or if the state court confronts facts that are materially indistinguishable from a relevant Supreme

5

Court precedent and arrives at a result opposite to that reached by the Court. Dixon v. Snyder, 266 F.3d 693, 700 (7th Cir. 2001). An "unreasonable application" of Supreme Court precedent occurs when the state court identifies the correct governing legal rule but unreasonably applies it to the facts of the particular state prisoner's case or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Id. In order to issue a writ of habeas corpus under the "unreasonable application" standard, the state court decision must be both incorrect and unreasonable. Bell v. Cone, 535 U.S. 685, 694 (2002); see also Williams, 529 U.S. at 411 (holding that the term "unreasonable" is not synonymous with "erroneous" or "incorrect"). A state court's decision is unreasonable when it is not one of several equally plausible outcomes or does not comport with recognized conventions of legal reasoning. Ward v. Sternes, 334 F.3d 696, 703 (7th Cir. 2003).

**C. Analysis of Merits**

    **1. Brady Claim**

Petitioner first argues that he was denied due process when the state did not provide the search warrant return as part of discovery, thus depriving him of the ability to develop his argument that officers, including Bonilla, planted evidence during the search of his home. The Due Process Clause requires the state to provide the defendant, on request, with all evidence that is favorable to the defendant and material either to guilt or to punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). This includes evidence concerning the reliability of key government witnesses. Giglio v. United States, 405 U.S. 150, 154-55 (1972). To establish a Brady violation, the defendant must show that: (1) the

6

state suppressed the evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the determination of guilt or punishment. See, e.g., Newell v. Hanks, 335 F.3d 629, 632 (7th Cir. 2003). Evidence is "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).

Petitioner argues that the warrant return impeached the testimony of Detectives Mathy and Bishop regarding Bonilla's involvement in the search of petitioner's residence, and that it bolsters the credibility of Gloria and Timeka Malone's testimony that officers were bringing items into petitioner's house and possibly planting evidence. The state court of appeals rejected these claims, holding:

> Detective Bonilla never testified at Malone's trial; thus, his credibility had no bearing on the jury's verdict. Malone's contention that Bonilla's criminal history could have had some bearing on the jury's view of his sister's and niece's implication that police might have planted evidence at the scene, while not absolutely impossible, is mostly "smoke and mirrors." Bonilla was not convicted of planting evidence anywhere; he was guilty of stealing from a crime scene.
>
> Malone's suggestion that the "cumulative effect of 'Bonilla' evidence" could have undermined the testimony of all the State's witnesses is purely speculative and, under the facts of this case, wholly illogical. After all, as Malone concedes, testimony on the first four counts had no relationship to the crimes uncovered in the search. And, regarding the six crimes coming from the search, Malone's theory would mean not only that Bonilla planted evidence, but also that numerous other officers executing the search warrant joined in his scheme. Malone offers nothing to even hint at such a proposition. Accordingly, we, like the trial court, conclude that the Bonilla evidence was immaterial to the jury's determination of Malone's guilt.

(Answer Ex. C at 7-8.)

7

This determination was not contrary to clearly established federal law. The court of appeals cited Brady and analyzed the issue under Brady's three part test.[1] (Answer Ex. C at 6.) Further, the court's conclusion was not unreasonable. The state court assumed that the evidence should have been turned over and that it was favorable to petitioner, but concluded that it was not material. Petitioner fails to persuasively argue that this was not a plausible outcome or that the state court's decision was in disregard of the evidence. First, Bonilla was not a witness at petitioner's trial; thus, impeachment of his testimony was not an issue. Second, the warrant return did not directly impeach Mathy and Bishop's testimony that Bonilla was not part of the entry team. Rather, the return states that he was part of the search and containment team. Third, the return does not plausibly support Gloria and Timeka Malone's testimony that officers were allegedly planting evidence. Bonilla was convicted of stealing money, not planting evidence, and several other officers – who have not been charged with misconduct – were also involved in the search.[2] Petitioner's defense could succeed only if the jury believed that all of these officers conspired to plant evidence. Further, because the Bonilla evidence did not touch the four controlled buys conducted before the search, it is that much less likely that the jury would have been persuaded by it. Therefore, the claim must be denied.

---

[1] Petitioner argues that the AEDPA standard should not apply because the state court did not analyze the merits of his claim in light of federal law. (Pet. Brf. in Chief at 9.) Petitioner is wrong.

[2] Petitioner attaches a newspaper article discussing an allegation that Bonilla also solicited a bribe from a drug suspect. Even if this information were properly before me, it does not plausibly enhance petitioner's evidence-planting theory.

8

## 2. Prosecutorial Misconduct

Petitioner's second claim is that the prosecutor committed misconduct by withholding the warrant return and asking questions of witnesses designed to suggest that Bonilla was not involved in the search of petitioner's residence. To establish prosecutorial misconduct, a habeas petitioner must show both that the prosecutor acted improperly and that his statements or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted); see also Banks v. Dretke, 540 U.S. 668, 703 (2004) (stating that where the prosecution withholds evidence the standard is whether there is a reasonable probability of a different result had the suppressed information been disclosed to the defense). The state court of appeals rejected petitioner's claim, stating:

> First, Malone points to nothing to establish that the prosecutor knew that Detective Bonilla had participated in the search. While the fact that the search warrant return may have been an internal police department document may not alter the analysis of whether it was a discoverable document within the State's exclusive control, it does support the prosecutor's claim that he had not seen the form until it was provided as an exhibit in support of Malone's postconviction motion.[3]
>
> Second, for the reasons we have explained, such alleged misconduct could have had no bearing on the outcome of Malone's trial. Indeed, it is noteworthy that, on appeal, Malone offers absolutely no reply to any of the State's no-prejudice/harmless-error arguments. Accordingly, we see no basis for overturning the trial court's rejection of Malone's claim of prosecutorial misconduct.

---

[3] Petitioner refers to the document as the "search warrant return." However, the document actually bears the title "In the Matter of: SEARCH WARRANT EXECUTION AT 1642 N. 29." (Pet. Brf. in Chief App. 123; Answer Ex. C at 2 n.1.) The court of appeals questioned whether this was actually the search warrant return required to be filed with the clerk of court under Wis. Stat. § 968.17, as opposed to an internal police department document. (Answer Ex. C at 2 n.1.) However, the state court assumed that the document was the warrant return for purposes of the appeal, and I have also referred to it as such.

9

(Answer Ex. C at 9, internal citations omitted.)

This determination was not contrary to clearly established federal law. While the court of appeals did not cite Supreme Court cases, the state precedents upon which it relied used the due process standard set forth in Darden and like cases. See Early v. Packer, 537 U.S. 3, 8 (2002) (holding that a state court need not cite Supreme Court cases so long as neither the reasoning nor the result of the state court decision contradicts them). Further, the decision did not result from an unreasonable determination of the facts and did not involve an unreasonable application of federal law. First, while petitioner argues that the prosecutor was aware of Bonilla's involvement, there is no supporting evidence in the record. The state court's factual determination that the prosecutor was unaware is entitled to presumption of correctness, 28 U.S.C. § 2254(e)(1), which petitioner has not overcome. Second, even if the prosecutor did know of Bonilla's role and sought to suppress it, petitioner can prevail only if there is a reasonably probability that the outcome would have been different. See United States v. Agurs, 427 U.S. 97, 110 (1976). For the reasons set forth above, the state court reasonably concluded that the Bonilla evidence would not have affected the outcome. Therefore, this claim must also be denied.

### 3. Ineffective Assistance of Counsel

Petitioner's third claim is that his trial counsel was ineffective in failing to obtain a copy of the search warrant return. Ineffective assistance is assessed under the two-pronged test outlined in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. Second, he must show that there is a reasonable probability that, but for counsel's incompetence, the result would have different. Id. at 694.

The state court of appeals discussed petitioner's ineffective assistance claim just briefly, in a footnote:

> Malone also argues that trial counsel rendered ineffective assistance by failing to file a discovery demand for the search warrant return. We need not address Malone's ineffective-assistance-of-counsel argument, however, because the State, in its responses, does not rely on any theory of waiver that would trigger an ineffective-assistance issue. See Gross v. Hoffman, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).
>
> Additionally, in response to Malone's claim of ineffective assistance, the State argues that there is "no reasonable probability that, had counsel filed the discovery demand, Malone would have been acquitted." The State is correct. For reasons we will explain in our discussion of Malone's other arguments, even if counsel's failure to obtain the document constitutes deficient performance, Malone was not prejudiced. Thus, Malone's ineffective-assistance claim merely rewraps his attempt to establish the materiality of Detective Bonilla's federal offense and Bonilla's role in executing the search warrant.

(Answer Ex. C at 2 n.2.)

Petitioner argues that the state court failed to address the claim on the merits, rendering AEDPA's deferential standard inapplicable. I disagree. Though the court's discussion was brief, it did address the issue, finding that petitioner had not demonstrated prejudice. Further, there was no need for extended discussion because the court addressed in detail the underlying violation counsel allegedly failed to challenge. Thus, AEDPA applies.

The state court's conclusion was neither contrary to nor an unreasonable application of Strickland. The state court recognized that an ineffective assistance claim requires a showing of prejudice, which mirrors the materiality showing required by Brady. See Strickler v. Greene, 527 U.S. 263, 299 (1999). And for the reasons set forth above, even

if counsel should have obtained the return, petitioner cannot show that his failure to do so was prejudicial.

### 4. Evidentiary Hearing

Finally, petitioner asks me to hold an evidentiary hearing. He contends that the state courts improperly denied him a chance to develop the record regarding whether the prosecution intentionally concealed Bonilla's involvement, and whether such evidence was prejudicial. (Pet. Reply Brf. at 15.)

AEDPA restricts the district court's ability to hold a hearing in a habeas case. If the petitioner has failed to develop the factual basis of a claim in state court proceedings, the habeas court may not hold an evidentiary hearing unless the claim relies on (1) a new rule of constitutional law or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). However, if the failure to develop the factual basis of the claim cannot be attributed to the petitioner, he does not have to meet the strict standards found in § 2254(e)(2). In such a case, a federal evidentiary hearing is required if (1) the petitioner alleges facts which, if proved, would entitle him to relief, and (2) the state courts never considered the claim in a full and fair hearing. Richardson v. Briley, 401 F.3d 794, 800 (7th Cir. 2005).

Petitioner's claim fails under either test. First, under the AEDPA standard, petitioner does not rely on any new rule of constitutional law, and he did discover the warrant return in sufficient time to present it to the state courts in his post-conviction/appellate

12

proceedings. Further, for the reasons discussed above, petitioner has not shown that the evidence was such that no reasonable jury would have convicted him had they known of it.

Second, even under the pre-AEDPA standard, the petitioner must still allege facts which, if proven, would entitle him to habeas relief. "'A hearing is not necessary if the petitioner makes conclusory or speculative allegations rather than specific factual allegations.'" Enoch v. Gramley, 70 F.3d 1490, 1498 (7th Cir. 1995) (quoting Daniels v. United States, 54 F.3d 290, 293 (7th Cir. 1995)). In the present case, petitioner presents only speculation that Bonilla engaged in evidence planting, which should be explored at a hearing. There is nothing in the record to suggest that Bonilla planted evidence in any case, nor any reason to believe that even if he did the other officers involved in petitioner's case were also corrupt.

Thus, petitioner's request for an evidentiary hearing is denied.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's requests for a writ of habeas corpus and for an evidentiary hearing are **DENIED**, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 13th day of September, 2005.

                              s/Lynn Adelman
                              LYNN ADELMAN
                              U.S. District Judge